Filed 4/4/25 P. v. Abad CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D083156 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FVI 1300181-2) |
| RUBEN ABAD, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Bernardino County, Michael A. Dauber, Judge. Affirmed.

Eric S. Multhaup, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Eric A. Swenson, Seth M. Friedman and Heather M. Clark, Deputy Attorneys General for Plaintiff and Respondent.

Defendant Ruben Abad appeals from an order denying his request for Penal Code section 1172.6[1] resentencing. After an evidentiary hearing, the trial court found Abad was not eligible for section 1172.6 relief because the evidence established beyond a reasonable doubt that he was the victim's actual killer. Abad contends he was denied due process and a fair resentencing determination because the prosecution and court failed to abide by his prior no contest plea to second degree murder, in which he and the prosecution stipulated he was an aider and abettor. He asks this court to remand for another section 1172.6 hearing at which the prosecution must prove beyond a reasonable doubt he was guilty as a direct aider and abettor, or resentence him to a lesser term. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

This court has stated the underlying facts of the offenses in two prior opinions. (*People v. Abad* (Jun. 15, 2015, D067449) [nonpub. opn.]; *People v. Abad* (Mar. 14, 2022, D079492) [nonpub. opn.].) The trial court in conducting Abad's evidentiary hearing did not receive new evidence; it took judicial notice of the complaint and information, Abad's plea agreement, and the plea and trial transcripts. We set out pertinent evidence from the trial transcripts in our substantial evidence review below, but for background purposes we need not detail all of the facts. It suffices to say that in 2012, investigating detectives determined that Abad and his codefendant Anthony Solis were involved in the March 1989 robbery, stabbing and death of Herbert Santos. Solis later testified at trial that after the three men had been drinking beer and wine, and while Solis was driving Santos's car, Abad stabbed Santos twice after Santos hit Solis in the face with a wine bottle. Solis stopped the car, and Abad stabbed Santos a third time. Solis denied an intent to rob or

---

1    Undesignated statutory references are to the Penal Code.

kill Santos or any participation in the assault, handling or disposal of Santos's body. Solis later followed Abad's direction to wipe their fingerprints from the car before abandoning it. Solis admitted to suffering prior felony convictions for a robbery and assault, two thefts, and a stabbing and theft. (*People v. Abad, supra,* D079492.)

In 2015, this court reversed Abad's 2013 first degree murder conviction with a robbery/murder special circumstance (*People v. Abad, supra,* D067449). On remand, Abad pleaded guilty to second degree murder. His plea agreement indicates he desired to change his plea "[b]ecause the district attorney [and] court has agreed to: [¶] 15 to life [¶] . . . [¶] under theory of aider and abettor." At the plea hearing, Abad's counsel responded to the court's question about the "[f]actual basis to this case" by stating, "Pursuant to our plea agreement as an aider and abettor theory and based on the . . . [¶] . . . [¶] . . . [t]rial transcripts, the preliminary hearings . . . and the police reports."

In 2020, the trial court summarily denied Abad's petition for section 1172.6 resentencing. (*People v. Abad, supra,* D079492.) This court reversed that decision, finding Abad's plea to second degree murder as an aider and abettor did not necessarily admit he committed the crime with malice aforethought, and his stipulation to the trial and preliminary hearing transcripts or police reports as the factual basis for his plea did not categorically preclude him from showing he could make out a prima facie case for section 1172.6 relief. (*People v. Abad, supra,* D079492.) We reasoned that in 2016, when Abad entered into his plea, the law was not such that his plea admitted he acted with express or implied malice so as to render him ineligible for section 1172.6 relief. (*Ibid.*) We observed his plea did not admit any particular mental state or facts establishing indisputably that he was a

3

direct aider and abettor to Santos's murder. (*Ibid.*) We remanded for the court to conduct an evidentiary hearing. (*Ibid.*)

On remand, the parties briefed whether the People could prove beyond a reasonable doubt that Abad could be found liable for second degree murder under current law so as to deny his petition for resentencing. Arguing the prosecution had "already failed to prove, beyond a reasonable doubt that he [was] the actual killer," Abad argued the prosecution could not present substantial evidence to prove beyond a reasonable doubt he was ineligible for section 1172.6 relief.

The People responded that the trial evidence and Abad's interview was sufficient for the court to find beyond a reasonable doubt that Abad was liable for second degree murder "having *directly* aided and abetted, while acting with an intent to kill with the requisite malice aforethought and that [Abad] was a *major participant* or who acted with reckless indifference to human life." More specifically, the People argued Abad had admitted to second degree murder "as a *direct* aider and abettor" and asserted "there is sufficient evidence in the trial record establishing direct aiding and abetting," "[Abad's] intent to kill" and "that [Abad] conspired to commit a robbery." They summarized: "In a remote area, [Abad] stabbed the victim three times, then dragged him across the highway, removed his pants and underwear, and drove off in the victim's car." The People further argued Abad was a major participant in the robbery and murder under the *Banks* and *Clark* factors (*People v. Banks* (2015) 61 Cal.5th 788; *People v. Clark* (2016) 63 Cal.4th 522). According to the People, Abad "engaged in conduct well beyond being merely aware of certain circumstances. . . . [Abad] produced the knife, [he] stabbed the victim three times, once in the car and twice outside of the car"; Abad "moved the body across the road into a less conspicuous area, removed

4

the victim's pants and underwear and left the victim face up in position"; [Abad] "drove off in [the] victim's vehicle and later initiated the wipe down of the vehicle for prints. While the autopsy revealed [the] victim died before being dragged across the road, that was not obvious at the time. No effort was made to aid the victim to prevent him from dying. There was no evidence to the contrary. [Abad] was a major participant who was acting with reckless indifference to the life of the victim. He did nothing to prevent his untimely and unnecessary death."

At the October 27, 2023 evidentiary hearing, the court took judicial notice of the complaint, information, Abad's plea agreement, and the plea and trial transcripts. The People argued there were two ways Abad could be convicted of murder under the new law, which was that he was a direct aider and abettor, or based on the trial transcript—specifically testimony from codefendant Solis and the forensic pathologist—he was the actual killer.

Abad's counsel pointed to evidence that Abad began stabbing Santos while Abad, his codefendant and the victim were driving in a car on a freeway after the victim began attacking Solis, who was driving. He argued the evidence was insufficient to show malice or intent to kill based on Abad's intoxication. Abad's counsel characterized Abad as acting "with the sense of self-preservation" to avoid being killed in a car crash.

The trial court denied Abad's petition, finding the People had established beyond a reasonable doubt that under current law, Abad was Santos's actual killer: "Mr. Solis's testimony from the record indicates that Mr. Abad stabbed Mr. Santos once in the car and twice outside, outside of the car. I mean, how do we look—how do we determine intent? Both by the instrumentality used and the—at least one aspect, and the wounds. We don't have an express statement of intent to kill, but we do have actual wounds.

5

The wounds that—the knife that was used, in fact, from the record, doesn't appear to have been the knife that was actually found.  It appears to be a different knife, but it's the same kind of knife.  And one can make a reasonable inference that Mr. Abad had the knife in his possession.  But that's really neither here nor there how he got the knife, but he did have the knife and the wounds were several.  They were in an area that lacerated the liver.  They were in a central location.  They were certainly—one was certainly done in the car.  [¶]  Even arguendo that if Mr. Abad was trying to protect Mr. Solis, which Mr. Solis felt he was trying to defend him, Mr. Solis indicated in the transcript that, you know, he was asked, 'Why do you think Abad did that?'  He really didn't have any idea, but his speculation was he was trying to help me.  However, that being even, given, conceded, there's no evidence of Mr. Solis being attacked outside of the car.  And he sees Mr. Abad stab Mr. Santos two more times.  That was the extent of the wounds.  The wounds I think demonstrate the intent.  They were all about four inches. · They penetrated the rib cage.  And all lacerated the liver, causing the . . . death.  That's from the forensic pathology report.  That is clear that, to this court, beyond a reasonable doubt that—and the cause of death being the stab wounds to the liver, that Mr. Abad is the actual killer, and he would still qualify under that theory of actual killing."

Though the court acknowledged Abad's stipulated plea, it did not address it: "I'm not going to address, even though there was a stipulation, it was a stipulated plea.  I don't think that the court needs to address the aider and abettor theory, although there's plenty of evidence of that.  . . . [T]he evidence was that Abad was the actual stabber and killer, not that Solis was. It was uncontradicted in the record of conviction.  So there's not really anything to directly aid and abet if you're the killer."  The court found the

6

context before, during and after the murder was corroborative evidence of intent to kill. It pointed to the pathologist's testimony that it would have taken 10 to 30 minutes for Santos to die; evidence from which it could infer the men dragged Santos while he was alive without offering him any help; Abad's direction to Santos after the murder to wipe down the car for fingerprints; and evidence the men fled the location.

## DISCUSSION

I. *Legal Principles Concerning Section 1172.6 and the Evidentiary Hearing*

Effective January 1, 2019, the Legislature amended the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Sen. Bill No. 1437; Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Curiel* (2023) 15 Cal.5th 433, 448.)[2] It redefined "malice" in section 188 to add a requirement that all principals to a murder "shall act with malice aforethought" and that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3), Stats. 2018, ch. 1015, §§ 2-3; *Curiel*, at p. 449; *People v. Lewis* (2021) 11 Cal.5th 952, 957.)

It also narrowed the classes of persons liable for felony murder under section 189. Now, "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [including robbery] in which a death occurs is liable for murder only if one of the following is proven: (1)

[2] As of January 1, 2022, the Legislature amended the law to allow a defendant to seek resentencing under its provisions for attempted murder and manslaughter convictions, among other changes. (Sen. Bill No. 755; Stats. 2021, ch. 551, § 2.)

7

The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e); *People v. Curiel, supra*, 15 Cal.5th at p. 448.)

The Legislature put in place a procedural mechanism for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief where the two substantive changes described above affect a defendant's conviction. (*People v. Curiel, supra*, 15 Cal.5th at p. 449.) It includes a petition procedure in which the court decides whether a defendant has made a prima facie showing of entitlement to relief under section 1172.6, subdivision (c). (*Id.* at p. 450.) Once a defendant makes such a showing, the court is required to issue an order to show cause and conduct an evidentiary hearing. (§ 1172.6, subds. (c) & (d)(1); *Curiel*, at p. 450.)

At the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 effective January 1, 2019." (§ 1172.6, subd. (d)(3).) The petitioner and the prosecution may offer new or additional evidence to meet their respective burdens, and the "admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." (*Ibid.*) Hearsay evidence admitted at a preliminary hearing

8

pursuant to section 872, subdivision (b), however, is to be excluded from the evidentiary hearing. (§ 1172.6, subd. (d)(3).)

"The trial court acts as an independent factfinder in determining whether the People have met their burden." (*People v. Villagrana* (2025) 108 Cal.App.5th 200, 205; *People v. Schell* (2022) 84 Cal.App.5th 437, 442.)

Ordinarily, this court reviews the trial court's denial of a section 1172.6 petition at the evidentiary hearing stage for substantial evidence. (See *People v. Reyes* (2023) 14 Cal.5th 981, 988.) Under this standard, our role differs from that of the trial court. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.) "While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*Ibid*.) In applying this standard, we "review the record ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value— such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*Reyes*, at p. 988.) We will not reverse the order unless there is no hypothesis upon which sufficient substantial evidence exists to support the trial court's decision. (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 125.) "We must 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] 'The same standard applies when the conviction rests primarily on circumstantial evidence.' [Citation.] 'An appellate court must accept logical inferences that the [trier of fact] might have drawn from the circumstantial evidence.' " (*Ibid*.) Under settled appellate principles, we

9

affirm if the trial court's order is correct on any legal theory, regardless of the reasoning in reaching its decision. (*People v. Zapien* (1993) 4 Cal.4th 929, 976 [appellate court will consider the correctness of the trial court's ruling, even if given for the wrong reason; "If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion"].)

## II. *Contentions*

Abad contends he was deprived of due process and a fair resentencing determination by the court and People's failure to abide by his 2016 plea agreement. He maintains by agreeing to the plea, the People forfeited any right to rely on Solis's testimony to establish he was Santos's actual killer. According to Abad, "[t]he prosecutor's only valid option at the section 1172.6[, subdivision] (d)(3) hearing was to prove beyond a reasonable doubt that [he] was guilty as a direct aider and abettor to Solis, the only valid theory available for a second degree murder conviction."

The People respond first that Abad forfeited these contentions because his counsel did not assert them at the evidentiary hearing. Pointing to evidence that they maintain shows Abad's intent to kill: his acts of stabbing Santos, dragging him away without helping him and leaving him to die, then fleeing the scene and wiping the car of fingerprints, they argue the court properly determined they had proved beyond a reasonable doubt that Abad was guilty of second degree murder under the theory that he was the actual killer. The People argue Abad's stipulation to aiding and abetting as the factual basis for his plea did not bind the prosecution or the trial court. They cite *People v. Rivera* (2021) 62 Cal.App.5th 217 for the proposition that "absent an indication that a defendant admitted the truth of particular facts, the stipulation to a factual basis for the plea does not 'constitute[ ] a binding

10

admission for all purposes.' " (*Id.* at p. 235.) The People argue that "[b]y stipulating to the factual basis, the prosecutor did not agree that aiding and abetting was the only theory that could be considered, or that the evidence only supported murder based on that theory." According to the People, it would be "nonsensical" to limit the court's consideration of the facts to one particular theory; rather it must review all applicable evidence to make its independent determination.

### III. *Abad Forfeited His Contentions*

We agree with the People that Abad forfeited his contentions by failing to object to the prosecutor's argument that the court could deny Abad's petition on grounds the evidence showed Abad was Santos's actual killer or that the court could consider Solis's testimony and any other evidence supporting the theory that he was the direct perpetrator of Santos's murder. A claim that evidence was erroneously admitted during a proceeding in which the Evidence Code applies is forfeited absent an objection when the evidence was offered. (Evid. Code, § 353, subd. (a).) And claims of constitutional violations are subject to forfeiture. (*People v. Navarro* (2013) 212 Cal.App.4th 1336, 1347, fn. 9 ["All issues, even those involving an alleged constitutional violation, are subject to the rule of forfeiture, and a defendant's failure to raise the issue before the trial court will generally result in the appellate court's refusal to consider it"].)

Abad's counsel did not ask the court to limit the evidence to only a theory of aiding and abetting in accordance with his plea agreement, nor did he object when the prosecutor raised the direct perpetrator theory. His counsel did not object when the trial court explained its reasoning on the record and found the evidence showed beyond a reasonable doubt that Abad was the actual killer. A claim on appeal implicating the admission of

11

evidence is "barred" where the appellant does not do enough to prevent or correct the claimed error in the trial court. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.)

In reply, Abad questions without meaningful analysis whether the forfeiture doctrine applies to his claim that the court breached his plea agreement. He argues in any event that if we rely on forfeiture, his counsel was prejudicially ineffective for failing to make appropriate objections so as to protect his constitutional rights.

We need not decide these points, nor do we need to decide whether the court violated Abad's plea agreement by finding substantial evidence he was Santos's actual killer. As explained below, Abad's no contest plea, combined with the evidence that he wielded the knife and stabbed Santos three times in the liver causing his death, constitutes substantial evidence that Abad directly aided and abetted second degree murder. He is thus ineligible for relief.

IV. *The Record Contains Substantial Evidence that Abad Directly Aided and Abetted Implied Malice Murder*

Though it denied Abad's petition for a different reason, the trial court in reaching its ruling on Abad's petition nevertheless observed that there was "plenty of evidence" that Abad was a direct aider and abettor to Santos's murder. " '[N]otwithstanding Senate Bill [No.] 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life.' " (*People v. Reyes, supra,* 14 Cal.5th at p. 990, quoting *People v. Gentile, supra,* 10 Cal.5th at p. 850; see also *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 391 ["aiding

12

and abetting implied malice murder [remains] a viable form of murder liability"].) " '[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea. [Citation.] In the context of implied malice, the actus reus required of the perpetrator is the commission of a life endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act. Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.' " (*Reyes*, at pp. 990-991, quoting *People v. Powell* (2021) 63 Cal.App.5th 689, 712-713.) The intent required to be found a direct aider and abettor in a crime can be formed during the commission of the crime. (*People v. Sedillo* (2015) 235 Cal.App.4th 1037, 1065-1066.)

The evidence before the trial court in this case included Abad's no contest plea to second degree murder as an aider and abettor in Santos's death. His under-oath affirmation of that circumstance—whether a term of his plea or the factual basis for it—is an adoptive admission under Evidence Code section 1221, and the court was authorized to consider this as part of the "evidence previously admitted at [a] prior hearing . . . that is admissible under current law." (§ 1172.6, subd. (d)(3); *People v. Villagrana, supra,* 108 Cal.App.5th at p. 205 ["Appellant's [no contest] plea and admissions are tantamount to evidence" and "certainly must be considered at a resentencing hearing"]; see Assem. Commission. On Pub. Safety, Analysis of Sen. Bill 775

13

(2021-2022 Reg. Session) as amended July 6, 2021, p. 10 [observing plea hearing transcripts were being used during evidentiary hearings on section 1172.6 petitions].)  Further, the evidence showed that Abad stabbed Santos in the lower chest three times and those knife wounds penetrated over four inches from Santos's skin into his liver, causing his death.  The evidence as to where Santos's body was found and the condition of his body permits a reasonable inference that after Abad stabbed Santos, Abad did not assist Santos in any way, but dragged Santos's body to a bush and left him to die.

Abad's admission that he aided and abetted Santos's murder, combined with the evidence that he wielded the knife and inflicted three deep stab wounds, leaving Santos to die from them, is sufficient evidence to support a finding beyond a reasonable doubt that the requisite actus reus occurred. These were acts the trial court could reasonably conclude were dangerous to human life and committed in conscious disregard for human life.  (*People v. Reyes*, *supra*, 14 Cal.5th at pp. 990-991.)  We reemphasize our limited role in reaching this conclusion.  (*People v. Villagrana*, *supra*, 108 Cal.App.5th 200.) In our search for substantial evidence, it is irrelevant that the evidence might also support a conclusion that Abad was the direct perpetrator.  (Accord, *Villagrana*, at p. 206 ["a rational trier of fact could reasonably have found appellant guilty, beyond a reasonable doubt, as a direct aider and abettor to murder, if not as the actual shooter"].)  It does not matter that differing conclusions can be drawn from the evidence or that there is contradictory evidence.  (See *People v. Pittman* (2023) 96 Cal.App.5th 400, 414.)  We do not reweigh the evidence or reevaluate credibility.  (*People v. Thomas* (2023) 14 Cal.5th 327, 379; *People v. Cody* (2023) 92 Cal.App.5th 87, 112.)  Our focus is only on whether substantial evidence supports a finding that Abad directly aided and abetted Santos's killing.

DISPOSITION

The order denying Abad's section 1172.6 petition for resentencing is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:

DATO, J.

CASTILLO, J.